UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                                                                                          ORDER
                v.                                                                                98-CR-176A

RASHEEN ALSTON,

                            Defendant.

---

        Following the defendant's conviction for a violation of 18 U.S.C. § 922(a)(6) and § 2 (aiding and abetting in the unlawful making of a false statement in conjunction with the unlawful acquisition of a firearm), the defendant was sentenced by Hon. John T. Elfvin to a term of incarceration of 57 months, to be followed by 3 years of supervised release. A judgment was entered on January 26, 2000.

        The defendant's supervised release initially commenced on December 12, 2002. On September 22, 2005, the defendant pleaded guilty to violating the terms of his supervised release by failing to notify the probation officer that he had been arrested for menacing and possession of a criminal weapon in the fourth degree. On October 21, 2005, Judge Elfvin sentenced the defendant to time served followed by two years of supervised release. A judgment was entered on October 28, 2005, and included the following conditions of supervised release:

                The defendant shall not commit another federal, state or
                local crime.

1

> The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.

On August 27, 2007, the United States Probation Office filed an Amended Petition against the defendant charging him with violating the terms of his supervised release by committing state law crimes. Specifically, the petition alleged that the defendant had violated: NYS Penal Law § 120.05(1) (assault with the intent to cause serious physical injury) (Charge 1); NYS Penal Law § 120.05(2) (assault with an intent to cause physical injury by means of a deadly weapon or dangerous instrument) (Charge 2); and NYS Penal Law § 265.01(2) (criminal possession of a weapon in the fourth degree) (Charge 3). The petition also charged the defendant with violating the term of supervised release prohibiting him from possessing a dangerous weapon while on release (Charge 4).

A supervised release hearing was held on August 28, 2007 and September 12, 2007. The government presented four witnesses at the hearing: Eric Kavulak, Don Starr, Lt. Shawn O'Brien, and U.S. Probation Officer Brian Burns. The defendant did not testify or present any witnesses.

For the reasons stated, the Court finds the defendant guilty of Charges 1, 2, 3 and 4 of the Amended Petition by a preponderance of the evidence.

### FINDINGS OF FACT

The following constitutes the Court's findings of fact based upon the testimony presented at the hearing. On the evening of July 14, 2007, witness Eric Kavulak was working as a doorman checking identification at a downtown Buffalo bar

called "Liar's." His friend, Jeff Angle, was working as a bouncer at a bar next door called "Big Shots." At approximately 3:45 a.m., Kavulak saw five African American males exit a sport utility vehicle (SUV) and approach Big Shots. The defendant, Rasheen Alston, was one of those five men. There was a heated exchange of words between Angle and the five men. The argument escalated and several men in the defendant's group, including the defendant himself, threatened to assault Angle. Kavulak rushed over to intervene and assist Angle. Kavulak shoved the defendant forcing the defendant to move backward several feet. The defendant did not lose his balance or fall to the ground. Other than the shove by Kavulak, there is no evidence that argument had become physical at that point or that any punches had been thrown.

After being shoved, the defendant rushed back toward Kavulak with a closed fist. Kavulak braced himself for what he believed would be a punch to his lower abdomen. Unbeknownst to Kavulak, the defendant had a knife in his fist and thrust it into the back of Kavulak's lower torso area. Kavulak felt that his shirt was wet and realized that he was bleeding heavily. He then saw a knife with a 3 to 4 inch blade in the defendant's right hand. Kavulak yelled "I've been stuck."

The knife used by the defendant was not a switchblade or gravity knife and required the defendant to pull the blade out of its holder manually. The Court finds that the defendant had already pulled out the blade before he was shoved by Kavulak. This finding is based upon Kavulak's testimony that he did not see the defendant pull the knife or the blade out before being stabbed, and based upon the testimony indicating that the defendant reacted to the shove by stabbing Kavulak almost

instantaneously. In short, the Court finds that the defendant had the knife in hand, with its blade extended, while threatening to assault Angle.

Upon hearing Kavulak yell, another person at the scene, Don Starr, intervened. Starr approached the defendant purportedly in an effort to disarm him and the defendant slashed Starr's hand.

Several Buffalo police officers arrived to break up the altercation, including Lt. O'Brian. Upon seeing the police, Kavulak and Starr saw the defendant go over to the SUV and drop the knife behind the SUV's tire. Lt. O'Brian also observed the defendant attempt to hide the knife behind the vehicle's tire. Buffalo police officers confiscated the knife and placed the defendant under arrest. No one else was arrested and no other weapons were found. Lt. O'Brian did not observe any cuts or bruises on the defendant. Other than the shove by Kavulak, there was no evidence that the defendant was assaulted or injured in any manner.

Kavulak was rushed to Erie County Medical Center (ECMC) by ambulance. Upon arriving, he was immediately sedated and given intravenous fluids while the hospital staff performed an emergency ultrasound to determine the extent of his injury. Doctors determined that the wound was approximately three inches deep and the defendant was given several staples to close the wound. According to Kavulak, the treating physician told him that the knife had missed his kidney by mere inches.

Starr was also treated at ECMC. He received 11 stitches to his left hand as a result of the knife injury by the defendant.

Probation Officer Brian Burns, the defendant's supervising probation officer, testified that the defendant was aware of the mandatory conditions of his

supervised release including the conditions that he not commit any other federal, state or local crimes while on release and that he not possess any dangerous weapons. In addition to being included on the judgment of conviction, it is the custom and practice of probation officers to go over those mandatory conditions of supervised release with a defendant upon the defendant's release.

The evidence at the hearing indicated that the defendant admitted stabbing Kavulak and Starr to the police and his probation officer, but claimed that he did so in self-defense.

## **DISCUSSION**

The government bears the burden of proving a violation of the conditions of supervised release by a preponderance of evidence. See 18 U.S.C. § 3583(e)(3); United States v. Meeks, 25 F.3d 1117, 1123 (2d Cir. 1994).

Based upon the evidence adduced at the hearing, the Court finds by a preponderance of the evidence that the defendant violated the terms and conditions of his supervised release as alleged in Charges 1, 2, 3 and 4 of the Amended Petition. Specifically, the Court finds that the defendant violated the condition of his supervised release that he not commit another state or federal crime when on July 14, 2007, he committed the crimes of Assault in the Second Degree in violation of NYS penal law § 120.05(1) and (2), and Criminal Possession of a Weapon in the Fourth Degree in violation of NYS Penal Law § 265.01(2).

To find that the defendant violated NYS Penal Law § 120.05(1), the Court must find by a preponderance of evidence that the defendant, with the intent to cause

serious physical injury, caused such serious physical injury to a person.  "Serious physical injury" is defined in § 10.00(10) of the NYS Penal Law to mean "physical injury which creates a substantial risk of death . . . ."  The evidence at the hearing established that on July 14, 2007, the defendant stabbed Eric Kavulak in the lower torso area with a 3 to 4 inch blade.  The testimony also established that the wound for the injury was approximately three inches deep and missed Kavulak's kidney by mere inches.  His treating physician told Kavulak that he was fortunate that his kidney was not injured.  Based upon this evidence, the Court finds that Kavulak suffered a serious physical injury that created a substantial risk of death.

Contrary to the defendant's argument, the Court finds that the defendant acted with the intent to cause such serious physical injury.  After being shoved backward by Kavulak, the defendant retaliated by stabbing Kavulak in the back.  He did not show Kavulak the knife and tell Kavulak to back off.  Nor did he seek to retreat from the scene.  Instead, he almost instantaneously thrust the knife into Kavulak's body, in an area where vital organs are located.  There can be no doubt that the defendant intended to cause the injury that was inflicted upon Kavulak.

The Court finds that the defendant also committed a violation of NYS Penal Law § 120.05(2).  To establish a violation of that provision, the Court must find that the defendant, with the intent to cause "physical injury" to another person, caused such injury by means of a "dangerous instrument."  Section 10.00(12) of the NYS Penal Law defines "dangerous instrument" as "any instrument, article or substance . . . which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury."  The term "physical

injury" is defined to mean any "impairment of physical condition or substantial pain." Id. at § 10.00(9).

The defendant caused substantial pain to both Eric Kavulak and Don Starr. As mentioned, Kavulak suffered a three-inch-deep wound that required several staples and a week in bed to recuperate. Starr's wound required eleven stitches. Both Kavulak and Starr testified that their injuries caused them to suffer substantial pain. The weapon used, a knife with a 3 to 4 inch blade, easily qualifies as a "dangerous instrument," particularly given the circumstances under which it was used. The knife was used in a manner which was readily capable of causing serious physical injury, which in fact it did. See People v. Searcy, 776 N.Y.S.2d 65 (1st Dept. 2004) ("Although the knife was small, the evidence established that defendant deliberately used it in a manner which resulted in a severe cut to the victim's hand, and which could have easily caused a disabling injury.").

The Court rejects the defendant's claim that the crimes were committed in self-defense. The defendant suggests that the altercation started because Angle and Starr were shouting derogatory racial slurs toward the defendant's group. The Court notes that there is no evidence to support that contention other than the defendant's self-serving exculpatory statements made to police officers as he was being arrested. The Court did not find those statements to be credible given the circumstances under which they were made and the fact that no other corroborating evidence was introduced. In any event, even if the Court were to infer that such unfortunate racial epithets were exchanged, that does not justify the defendant's actions. As the government correctly notes, to support a justification defense under New York law, the

defendant must show that at the time the deadly physical force was used, he reasonably believed that another person was about to use deadly physical force on himself or another.  See NYS Penal Law § 35.15(2).[1]  The evidence was clear that at the time the defendant stabbed Kavulak, the only physical force used was a shove by Kavulak.  As noted, the shove only caused the defendant to move back a few feet.  It did not cause the defendant to lose his balance or fall to the ground.  The defendant's response in stabbing Kavulak was unreasonable and was not in response to any threat of deadly physical force to himself or others.  Neither the defendant nor anyone else had been injured at that point.  Only the defendant had a weapon.  The defendant could not have reasonably believed that his life (or the life of another) was in danger.  The evidence was also clear that the defendant had other options, most notably, he could have retreated from the escalating argument.  The circumstances did not require him to use his knife in order to save himself or anyone else.  Accordingly, the defendant's self-defense argument is rejected.

The Court finds that the defendant is also guilty of Charge 3 of the Amended Petition because he violated the terms of supervised release by committing the crime of criminal possession of a weapon in the fourth degree, in violation of NYS

---

[1] NYS Penal Law § 35.15(2) provides, in pertinent part:

A person may not use deadly physical force upon another person under circumstances specified in subdivision one unless:

(a) The actor reasonably believes that such other person is using or about to use deadly physical force. Even in such case, however, the actor may not use deadly physical force if he or she knows that with complete personal safety, to oneself and others he or she may avoid the necessity of so doing by retreating . . . .

Penal Law § 265.01(2). A person is guilty of that offense when he "possesses any . . . dangerous knife . . . or any other dangerous or deadly instrument or weapon with intent to use the same unlawfully against another." Based upon the foregoing, the Court finds that the defendant's possession of the knife on July 14, 2007 constituted a "dangerous knife" or weapon and that the defendant possessed that weapon with the intent to use it against another on that night.

Finally, the Court finds that the defendant is guilty of Charge 4 of the Amended Petition because he violated the condition of supervised release that he not possess any dangerous weapon. The Court rejects the defendant's claim that he was unaware that the knife at issue constituted a "dangerous weapon." Clearly, common sense dictates that a knife with a 3 to 4 inch blade would constitute a dangerous weapon in violation of that condition. Additionally, it is the custom and practice of the probation office to explain the meaning of those supervised release conditions to a defendant. There is no evidence to suggest that this was not done in this case. The terms were also included on the defendant's judgment of conviction and the defendant never sought clarification of their meaning if there was any confusion.[2] The Court finds that the defendant understood that a knife was a dangerous weapon but chose to possess it anyway.

---

[2] The Court notes that the defendant was represented by the same counsel at that time as in the instant hearing and there is no evidence suggesting that counsel failed to go over the terms and conditions of supervised release with the defendant.

**CONCLUSION**

For the reasons stated, the Court finds by a preponderance of the evidence that the defendant is guilty of Charges 1, 2, 3 and 4 of the Amended Petition.

The parties shall appear for sentencing on October 12, 2007 at 1:00 p.m.

SO ORDERED.

                                        s/ *Richard J. Arcar*a
                                        HONORABLE RICHARD J. ARCARA
                                        CHIEF JUDGE
                                        UNITED STATES DISTRICT COURT

DATED:  September 19, 2007